Submitted on briefs without argument May 27, decided June 10, rehearing denied July 1, 1913.

## STATE EX REL. *v.* PORT OF BAYOCEAN.

### (133 Pac. 85.)

**Municipal Corporations—Existence—Admission by Suing as Such.**

1. Where, in a proceeding in the nature of *quo warranto* to test the legality of the organization of a port as a municipal corporation, it was described, not as a corporation, but as a pretended corporation, and the persons claiming to be officers and joined as defendants were not described as officers, but as individuals, the filing of the complaint against the pretended corporation by name was not an admission of the existence of the corporation.

**Municipal Corporations—Establishment—Election Notice—Description of Boundaries.**

2. Where the notice of an election for the organization of a proposed port omitted one call from the description of the boundary, thus leaving a hiatus, the proceeding was void, there being no way in which the misdescription could be corrected or reformed.

**Municipal Corporations—Establishment—Boundaries of Corporation.**

3. A proceeding to organize a proposed port was void where the boundaries of the proposed port included a part of the watersheds of two other bays so extensive that it passed beyond a mere technical deviation from the statute, and became a matter of substance.

**Elections—Conduct of Elections—Proof of Qualifications.**

4. Under Section 3449, L. O. L., prescribing a form to be subscribed by nonregistered persons claiming the right to vote at an election, in which they are required to set forth particularly their place of residence and length of residence in the state, and which the judge may require to be attested by not more than six witnesses, who must swear that they are each personally acquainted with the proposed voter and his residence as stated by him, such subscribing witnesses are not qualified as such, unless they have actual personal knowledge of the voter's residence and actual personal acquaintance with him, and they cannot base their affidavit on the statements of the proposed voter or of other persons.

From Tillamook: WILLIAM GALLOWAY, Judge.

Statement by MR. CHIEF JUSTICE McBRIDE.

This is a proceeding in the nature of *quo warranto*, by the State of Oregon, upon the relation of Edward Blum, B. W. Turner, Chas. Desmond, James Holland, Andrew Brown, Frank Long, Sr., W. E. Anderson,

Fred Blum, Henry Schilds and James Simmons, to test the legality of the organization of the Port of Bayocean, an alleged municipal corporation, M. J. O'Donnell, James Christensen, E. C. Lockwood and W. F. Richardson, claiming to have been organized under the provisions of the statutes providing for the organization of ports. The petition for an order for an election to determine whether the proposed port should be organized is in proper form and specifies the boundaries of the proposed port with convenient certainty. In the notice of the election, after specifying the place of beginning and several calls not necessary here to observe, occurs the following indefinite call: "Thence north five miles to the southwest corner of section 3, township 2 south, range 10 west of the Willamette meridian, thence west one-half mile, thence north along the quarter section line in section 4, township 2 south, range 10 west of the Willamette meridian, and sections 33 and 28 to the *north line and section* 28, township 1 south, range 10 west of the Willamette meridian"—the indefinite call being italicized. The proposed boundaries also included portions of the watershed tributary to Nestucca Bay, and a portion of the watershed tributary to Netarts Bay. The relators brought this proceeding alleging these errors and also fraud and irregularity in the conduct of the election, which matters are stated in the opinion. The court declared the proceeding void, and the defendants appeal.                                    AFFIRMED.

Submitted on briefs without arguments, under the proviso of Rule 18 of the Supreme Court: 56 Or. 622 (117 Pac. xi).

For appellants there was a brief over the name of *Mr. Webster Holmes.*

For respondents there was a brief over the names of *Mr. Gale S. Hill,* District Attorney, *Mr. Sidney S. Johnson* and *Mr. T. B. Handley.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

1. The first contention of appellant is that by filing a complaint against the corporation *eo nomine* relators have admitted the existence of the corporation, and in support of this proposition they cite 2 Spelling, Ex. Rem., § 1844; 3 Abbott, Mun. Corp., § 1145, and numerous decisions. These do not apply in this case, as the defendant is described, not as a corporation, but as a pretended corporation, and the persons claiming to be the officers are not described nor impleaded as such, but as individuals only.

2. We do not believe the notice of election sufficiently describes the exterior boundaries of the proposed port. The omission of one call from the description of the boundary leaves a hiatus to be supplied by the imagination of the person reading the notice. A defective description of a boundary in a deed may be corrected by a suit to have it reformed according to the true intent of the parties, but a misdescription in an election notice cannot be corrected nor reformed by any sort of proceeding. It must be absolutely definite in itself. This notice lacks that quality, and the proceeding is void.

3. We are also of the opinion that the inclusion of part of the watersheds of two other bays renders the proceeding void. In *State ex rel.* v. *Port of Bay City,* 64 Or. 139 (129 Pac. 496), we held that a substantial and not a technically mathematical compliance with the statute is sufficient; but the area of watershed tributary to other ports is so extensive in this instance that it passes beyond a mere technical deviation from the statute, and becomes a matter of substance. It is

not contemplated that inhabitants of other ports shall be bound by the notices posted in the district proposed to be included, and their rights can only be protected by the courts refusing to sanction any substantial deviation from the area which the statute permits the inhabitants of any particular locality to include within their port boundaries.

4. The two propositions above discussed settle the case, but we deem it proper to call attention to the irregular manner in which the attestation of the qualifications of nonregistered voters was conducted. Section 3449, L. O. L., prescribes a form, designated as "Blank A," to be subscribed by a nonregistered person claiming the right to vote at an election wherein he is required to set forth particularly his place of residence and the length of time he has resided in the state. This the judges may require to be attested by not more than six witnesses, who must be freeholders of the county and who are required to subscribe to the following oath: "We, the undersigned witnesses, do swear that our names and signatures are genuine; that we are each personally acquainted with the elector and his residence as stated, that we believe all his other statements are true, and that we are each freeholders in the county."

It will be seen that there are two facts of which the witness must have actual and personal knowledge: (1) Of the actual residence of the person offering his vote; and (2) that he has resided in the state for six months immediately preceding the election. The statements of the intending voter, or of other persons, to the subscribing witness to the affidavit, are not sufficient to qualify him to testify as to the residence of the voter. He must know at first hand that the voter resides in the precinct and that he has resided in the state for six months; and this, of course, involves actual ac-

quaintance with the voter for that period. It does not appear that the subscribing witnesses to the affidavits referred to had any such acquaintance with the persons whose qualifications they vouched for. The witnesses did not even reside in the district where the vote was taken, and did not know of their own knowledge where any of the proposed voters had lived for the six months next preceding the election. There was a large number of these persons, all employees of the Potter Realty Company, which appears to have been the active agent in the project of creating the Port of Bayocean in connection with its business interests at that place; and most, if not all, of them it is conceded voted in favor of the organization of the port. There being no machinery provided by which the county court can investigate the legality of the votes cast at a port election, it is perhaps competent for citizens whose property is included within a proposed port to question the legality of the vote by which it is claimed to have been established by a proceeding in the Circuit Court. However, it is not necessary to pass upon this question in the present case, but the frequent practice of persons acting as witnesses to the residence of nonregistered voters upon a mere introduction or vouchment by other persons, and without actual personal knowledge of such residence and actual personal acquaintance with the proposed voter, is not warranted by law, and in fact is a violation thereof.

The judgment of the Circuit Court is affirmed.

AFFIRMED.