**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
FEBRUARY 25, 2021

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
FEBRUARY 25, 2021

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 98326-7 |
| Petitioner, | |
| v. | EN BANC |
| ANTHONY THOMAS WALLER, | |
| Respondent. | Filed: February 25, 2021 |

GORDON McCLOUD, J.—Under RAP 2.2(b)(3), the State has a right to appeal "[a]n order … vacating a judgment." Does that Rule give the State the right to appeal a superior court order granting a CrR 7.8(b) motion for relief from judgment in a long-since final criminal case? Clearly, under the language of RAP 2.2(b)(3), the answer is yes: The State may appeal such "[a]n order arresting or vacating a judgment."

*State v. Waller* (*Anthony Thomas*), No. 98326-7

In this case, however, the superior court did not clearly state that it was "arresting or vacating" Anthony Waller's judgment, or even granting his motion, in its first order on his CrR 7.8 motion. Instead, it skipped straight ahead to ordering a resentencing hearing. So this case presents an additional question about the application of RAP 2.2(b)(3) in this unusual context: Does a series of superior court orders retaining jurisdiction of a CrR 7.8 motion, scheduling a resentencing hearing, ordering the prisoner transported for that resentencing hearing, and clarifying that the first order did indeed grant the CrR 7.8 motion, amount to granting the motion and "vacating" the old sentence within the meaning of RAP 2.2(b)(3)? We hold that it does and reverse the Court of Appeals.

As the discussion below shows, when a superior court receives a CrR 7.8 motion, it should follow the CrR 7.8(c) procedures. Pursuant to those procedures, the court should ordinarily hold a show cause hearing before granting relief.

FACTS

In January 1999, when Waller was 21 years old, a man saw him and his friends breaking into vehicles in Tukwila, Washington. 1 Clerk's Papers (CP) at 2-3. Waller chased the man and stabbed him repeatedly in the face and eyes with a screwdriver. *Id.* at 3, 32. The man died of his injuries. The following December, a jury convicted Waller of first degree murder. *Id.* at 26.

2

*State v. Waller* (*Anthony Thomas*), No. 98326-7

The trial court found that the "more than 40 stab wounds inflicted with a flat head screw driver and concentrated [on the victim's] head and face represent[ed] deliberate cruelty" justifying an exceptional sentence. *Id.* at 32-33. The standard range was 261-347 months, but the trial court imposed an exceptional sentence of 432 months. *Id.* at 28-29, 32-33.[1] The Court of Appeals affirmed, and the mandate issued on November 15, 2002. 2 CP at 63; *State v. Waller*, 107 Wn. App. 1047 (2001), 2001 WL 919349.

Sixteen years later, in March 2018, Waller filed a pro se CrR 7.8 motion in the superior court, seeking relief from judgment. 2 CP at 37-44. He argued that he was entitled to resentencing under *State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015),[2] because it constituted a retroactive, material change in the law that exempted his motion from the one-year collateral attack time bar. 2 CP at 39-40; *see* RCW 10.73.100(6). He sought the following relief: "grant this motion, *vacate the judgment*, and set a resentencing hearing." 2 CP at 40 (emphasis added). The State moved to transfer Waller's motion to the Court of Appeals for consideration

---

[1] Waller's case predated *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Accordingly, the trial court found that Waller's crime showed deliberate cruelty and justified an exceptional sentence above the standard range. 1 CP at 32-33; *see State v. Evans*, 154 Wn.2d 438, 448, 114 P.3d 627 (2005) (declining to apply *Blakely* retroactively to cases final on direct review).

[2] *O'Dell* holds that youthfulness may constitute a mitigating factor supporting a sentence below the standard range, even for a person over age 17 whose case is heard in the superior court. 183 Wn.2d at 698-99.

3

as a personal restraint petition (PRP). *Id.* at 48; *see* CrR 7.8(c)(2). On April 17, the superior court granted the State's motion; it ruled that Waller's motion was "time-barred by RCW 10.73.090" and that CrR 7.8(c)(2) therefore required the transfer to the Court of Appeals. *Id.* at 75-76.

Waller, now represented by appointed counsel, moved to reconsider the transfer in light of the Court of Appeals' decision in *In re Personal Restraint of Light-Roth*[3] because that Court of Appeals decision in *Light-Roth* I validated Waller's *O'Dell*-retroactivity argument. *Id.* at 77. This time, Waller sought the following relief: "[R]econsider [the] transfer of Mr. Waller's properly filed CrR 7.8 motion, retain jurisdiction, and set the matter for a resentencing hearing." *Id.* at 82.

On June 7, 2018, the superior court granted Waller's motion for reconsideration and vacated its transfer order. *Id.* at 116. It held that "in light of [*Light-Roth* I], it appears that the motion should be granted and a resentencing hearing should be scheduled." *Id.* The superior court then began scheduling the resentencing hearing and instructed the parties to brief the scope of resentencing. *Id.* at 117. The superior court's order did not explicitly state that it was granting Waller's CrR 7.8 motion to vacate Waller's sentence (though its decisions to

---

[3] 200 Wn. App. 149, 401 P.3d 459 (2017) (*Light-Roth* I), *rev'd*, 191 Wn.2d 328, 422 P.3d 444 (2018) (*Light-Roth* II).

*State v. Waller* (*Anthony Thomas*), No. 98326-7

schedule resentencing and order briefing on resentencing certainly suggest that it did). *Id.* at 116-17.

Waller filed the requested resentencing briefing and, on June 25, the court ordered Waller transported from the Department of Corrections' custody for the hearing. *Id.* at 118-23. On June 26, the court clarified that its order on Waller's motion for reconsideration, "which implicitly grants a resentencing hearing, was indeed intended to order a resentencing hearing for the defendant (over the objection of the State of Washington)." *Id.* at 124. That clarification order also stated that the court's earlier "June 6, 2018 order . . . expressly order[ed] a resentencing hearing for the defendant." *Id.*

Three days later, the State filed a "notice of appeal and/or of discretionary review" to this court. *Id.* at 140. The State acknowledged that there was "currently controversy over whether [it] may appeal orders of this type." *Id.* (citing *State v. Garrison*, No. 95860-2).[4] On July 17, the superior court issued an order under RAP 7.2[5] canceling the resentencing hearing and denying a pending motion to stay as moot. 3 CP at 145-46. In that order, the superior court explicitly stated that it had granted Waller's CrR 7.8 motion in its previous orders: "On

___

[4] Motion for Discretionary Review in *Garrison* filed on May 14, 2018 and subsequently voluntarily withdrawn on July 20, 2018.

[5] RAP 7.2 limits trial court authority "[a]fter review is accepted by the appellate court." RAP 7.2(a).

*State v. Waller* (*Anthony Thomas*), No. 98326-7

March 8, 2018, Defendant Anthony Waller filed a Motion for Relief from Judgment, *which the Court ultimately granted.*" *Id.* at 145 (emphasis added) (footnote omitted). It also stated that "when the State sought review of the Court's rulings (granting relief from judgment), the State appealed as a matter of right under RAP 2.2(b)(3) (Arrest or Vacation of Judgment)." *Id.* at 146.

We issued our decision in *Light-Roth* II on August 2 and reversed the Court of Appeals decision on which the trial court had based its order granting Waller relief. 191 Wn.2d 328 (holding that *O'Dell* did *not* apply retroactively to Light-Roth).

In April 2019, we transferred the State's petition for direct review to the Court of Appeals. In October 2019, after the Court of Appeals heard argument but before it issued a ruling, the superior court issued an Order Clarifying June 2018 Orders. 5 CP at 163. It stated that our court's decision in *Light-Roth* II "was the basis of" its June 2018 orders and that "[i]n light of the Supreme Court decision [reversing *Light-Roth* I], this Court does not intend to hold a resentencing in this case." *Id.* at 164. The superior court further announced that it intended to vacate its June 2018 orders, but, in "an abundance of caution," it would not do so until "appellate review is concluded or 'the permission of the appellate court [is] obtained.'" *Id.* (alteration in original) (quoting RAP 7.2(e)). The appellate court gave that permission. In January 2020, the superior court vacated its June 2018

6

orders. *Id.* at 166. That left the case transferred to, and pending in, the Court of Appeals per the superior court's April 17, no-longer-vacated, transfer order.

The Court of Appeals acknowledged that the case was moot because the trial court intended to vacate its decision in light of *Light-Roth* II. *State v. Waller*, 12 Wn. App. 2d 523, 533, 458 P.3d 817 (2020). But it ruled that the "narrow question of whether the State has the right under RAP 2.2(b)(3) to appeal an order granting a CrR 7.8(b) motion for relief from judgment requesting a new sentencing hearing" was an issue of continuing and substantial public interest that would likely evade review. *Id.* at 534 (citing *State v. Clark*, 91 Wn. App. 581, 584, 958 P.2d 1028 (1998)). We agree with the Court of Appeals' reasoning on the mootness issue and therefore retain the case for decision despite the fact that it is moot.[6]

The Court of Appeals then held that under RAP 2.2(b)(3) and CrR 7.8(b), the State had no right to appeal. *Id.* at 536-37. It reasoned that the State may appeal only from "an order vacating a judgment," but where "the court does not amend the sentence, the judgment remains in effect." *Id.* at 536 (citing RAP 2.2(b)(3); CrR 7.8(b)). It began with the premise that CrR 7.8(b) motions "'do[] not affect the finality of the judgment or suspend its operation'" and "[t]he

---

[6] *See In re Pers. Restraint of Mattson*, 166 Wn.2d 730, 736, 214 P.3d 141 (2009) (We may "'retain and decide an appeal which has otherwise become moot when it can be said that matters of continuing and substantial public interest are involved.'" (quoting *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972))).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

uncontroverted record establishe[d] the court did not amend the judgment and sentence," and then concluded that the trial court had not vacated the judgment. *Id.* at 536-37 (quoting CrR 7.8(b)). The Court of Appeals rejected the argument that the superior court's decision "grant[ing] Waller's CrR 7.8(b)(5) motion" and scheduling a resentencing hearing vacated the judgment. *Id.* at 537.

We granted review to decide whether RAP 2.2(b)(3) gives the State the right to appeal an order granting a CrR 7.8(b) motion. *State v. Waller*, 195 Wn.2d 1024 (2020). We hold that RAP 2.2(b)(3) does give the State that right. We further hold that the record in this case shows that the superior court granted Waller's CrR 7.8(b) motion in this case, so RAP 2.2(b)(3) gives the State the right to appeal that decision.

ANALYSIS

I. RAP 2.2(B)(3) GIVES THE STATE THE RIGHT TO APPEAL FROM ORDERS "ARRESTING OR VACATING A JUDGMENT"

When a superior court *denies* a CrR 7.8 motion to vacate, "the defendant has a right to direct appeal" under RAP 2.2(a)(10). *In re Pers. Restraint of Ruiz-Sanabria*, 184 Wn.2d 632, 638, 362 P.3d 758 (2015) (per curiam) (citing RAP 2.2(a)(10)). And when the superior court *grants* a CrR 7.8 motion to vacate, the State has a right to direct appeal under RAP 2.2(b)(3).

*State v. Waller* (*Anthony Thomas*), No. 98326-7

To be sure, we have not previously ruled that RAP 2.2(b)(3) grants the State this right to appeal. We have, however, worked on that assumption.[7] We now make that assumption an explicit holding. The parties agree that RAP 2.2(b) controls the State's right to appeal in criminal cases. RAP 2.2(b) sets out an exclusive list of orders from which the State may appeal and limits even that list with the qualifier, "only if the appeal will not place the defendant in double jeopardy." RAP 2.2(b).

RAP 2.2(b)(3) is the subsection that allows the State to appeal "[a]n order arresting or vacating a judgment." We review interpretation of a court rule de novo using the rules of statutory construction. *State v. McEnroe*, 174 Wn.2d 795, 800, 279 P.3d 861 (2012) (citing *State v. Osman*, 168 Wn.2d 632, 637, 229 P.3d 729 (2010); *Wiley v. Rehak*, 143 Wn.2d 339, 343, 20 P.3d 404 (2001)). But there's just not that much to interpret here. RAP 2.2(b)(3) gives the State the right to appeal an order "vacating a judgment." An order granting a CrR 7.8(b) motion to vacate a judgment vacates that judgment. Hence, the State can appeal such an order.

---

[7] As the State points out, we have accepted two recent appeals from trial court decisions granting CrR 7.8 motions. *State v. Miller*, 185 Wn.2d 111, 371 P.3d 528 (2016); *State v. Scott*, 190 Wn.2d 586, 416 P.3d 1182 (2018). No party in either of those cases raised the issue of the State's right to appeal and neither decision opined on that issue. Thus, the State's right to appeal from a trial court order granting a CrR 7.8 motion remains an open question that we resolve today.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

II.     THE TRIAL COURT'S DECISIONS IN THIS CASE "VACATED" THE JUDGMENT

The remaining question in this case is a limited and fact-dependent one:  Did the trial court's two orders—first, the order that granted Waller's motion for reconsideration of its decision to transfer his CrR 7.8 motion to the Court of Appeals and scheduled a resentencing hearing, and second, the trial court's order clarifying its first order—grant Waller's motion and thus "vacat[e]" his criminal judgment within the meaning of RAP 2.2(b)(3)?  The answer is clear from the language of that court's orders and the context in which they were made.

   A.  *WALLER SOUGHT VACATION OF JUDGMENT AND VACATION OF JUDGMENT IS A STANDARD REMEDY AVAILABLE UNDER CRR 7.8*

CrR 7.8 allows parties in a criminal case to move for "relief from [a] judgment or order."  When the superior court receives a motion under this rule, it "shall transfer" that motion "to the Court of Appeals for consideration as a [PRP] unless the court determines that the motion is not barred by RCW 10.73.090 and either (i) the defendant has made a substantial showing that he or she is entitled to relief or (ii) resolution of the motion will require a factual hearing."  CrR 7.8(c)(2). When transferring a motion pursuant to CrR 7.8(c)(2), the court should "expressly state[] the basis for the transfer."  *Ruiz-Sanabria*, 184 Wn.2d at 638.

When the trial court "does not transfer the motion to the Court of Appeals, it shall enter an order fixing a time and place for hearing and directing the adverse

party to appear and show cause why the relief asked for should not be granted."

CrR 7.8(c)(3).

CrR 7.8 itself does not specify what "relief" may be available. It references

"vacation" only once: in the heading for subsection (c) titled "Procedure on

Vacation of Judgment." But we have held that "[u]nder CrR 7.8(b), a judgment

may be modified or vacated." *State v. Hardesty*, 129 Wn.2d 303, 315, 915 P.2d

1080 (1996). CrR 7.8 provides the superior court with "jurisdiction to amend a

judgment to correct an erroneous sentence, where justice requires." *Id.* (citing

*State v. Shove*, 113 Wn.2d 83, 88, 776 P.2d 132 (1989)). Thus, parties frequently

style CrR 7.8 motions as motions to "vacate" judgment. *See, e.g.*, *In re Pers.*

*Restraint of Bailey*, 141 Wn.2d 20, 22, 1 P.3d 1120 (2000); *In re Pers. Restraint of*

*Erhart*, 183 Wn.2d 144, 146, 351 P.3d 137 (2015).

Vacation of judgment is exactly what Waller sought in this case. He asked

the superior court to "vacate the judgment, and set a resentencing hearing." 2 CP at

40. The next question is whether the superior court granted that relief.[8]

---

[8] The Court of Appeals relied on the "plain and unambiguous language of CrR 7.8(b)" that "'[a] motion under section (b) does not affect the finality of the judgment or suspend its operation.'" *Waller*, 12 Wn. App. 2d at 536-37 (quoting CrR 7.8(b)). This language makes clear that the *filing* of a motion does not affect the finality of a judgment. But the superior court certainly has authority to affect finality in its *ruling* on a CrR 7.8(b) motion. Any other interpretation would render CrR 7.8 entirely toothless.

B. *The Superior Court Vacated the Judgment in This Case Because It Granted a Motion Seeking Vacation of That Judgment*

In a series of orders on Waller's CrR 7.8 motion, the superior court vacated its transfer of Waller's motion to the Court of Appeals, retained jurisdiction over that motion, and scheduled a hearing for resentencing—not for argument about whether it should actually set a resentencing hearing. Later, the court clarified that it had "ultimately granted" the CrR 7.8 motion. 3 CP at 145. As discussed above, that was a motion to vacate. This language and context compels us to conclude that the trial court granted Waller's CrR 7.8 motion and the relief he had requested in that motion: vacation of the judgment.

Controlling case law permits no other interpretation of those orders. It makes clear that the judgment "in a criminal case means sentence" and the "sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212, 58 S. Ct. 164, 82 L. Ed. 204 (1937). So if a court vacates the sentence, it vacates the judgment.

We acknowledge that we have also stated that a judgment may not be "vacated by implication." *Wagner v. N. Life Ins. Co.*, 70 Wash. 210, 212, 126 P. 434 (1912). But a court need not speak the magic words, "this judgment is vacated," either. For example, an appellate court that "reverses a sentence . . . effectively vacates the judgment," even if it does not use the word "vacate" in its

12

opinion. *In re Per. Restraint of Skylstad*, 160 Wn.2d 944, 954, 162 P.3d 413 (2007). After the appellate court reversed Skylstad's sentence "there was no valid judgment." *Id.* Although the appellate court on Skylstad's direct appeal had not *stated* that it "vacated" Skylstad's sentence, *State v. Skylstad*,[9] until Skylstad had been resentenced, there was "no judgment for Skylstad to collaterally attack" because his judgment had been vacated. 160 Wn.2d at 954. Granting a CrR 7.8 motion similarly vacates the old sentence until the defendant can be resentenced.

Waller suggests that a different decision limits this aspect of *Skylstad*: *State v. Kilgore*, 167 Wn.2d 28, 216 P.3d 393 (2009). In *Kilgore,* this court ruled that if an appellate court reverses some convictions but affirms others, and the trial court "exercises no discretion on remand," then the "'portion of the judgment and sentence that was correct and valid at the time it was pronounced' is unaffected." *Id.* at 37 (citing *State v. Barberio*, 121 Wn.2d 48, 51, 846 P.2d 519 (1993), and quoting *In re Pers. Restraint of Carle*, 93 Wn.2d 31, 34, 604 P.2d 1293 (1980)). Thus, reversal of some counts may not always "vacate" the entire judgment. But *Kilgore* explicitly recognized that "[u]ntil the trial court exercised its *independent judgment by imposing a new judgment and sentence*, Skylstad had no sentence, effectively vacating the judgment." *Id.* at 36 n.5 (emphasis added) (citing *Skylstad*,

---

[9] 118 Wn. App. 1062 (2003), 2003 WL 22293605.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

160 Wn.2d at 954). This case is more like *Skylstad* than *Kilgore*: the superior court would have exercised "independent judgment" at Waller's new sentencing hearing; hence, until it did so, Waller, like Skylstad, had "no sentence." *Id.* His sentence had been vacated.

The superior court's orders confirm this. After entry of its initial orders transferring the case to the Court of Appeals, the superior court granted Waller's motion for reconsideration and took the case back. Its order granting reconsideration stated that it "intended to order a resentencing hearing"—something it could not do unless it had vacated Waller's existing sentence. 2 CP at 124. The superior court later clarified that it had, in a previous order, "ultimately granted" Waller's CrR 7.8 motion to vacate. 3 CP at 145.

The confusion over whether the superior court really granted Waller's motion to vacate might have arisen because the superior court did not follow CrR 7.8(c)(3)'s directive to schedule a show cause hearing on Waller's motion before granting it. Holding such a hearing and issuing a decision after the opportunity to consider arguments made at that hearing may have provided additional clarity about whether the superior court was, indeed, granting the CrR 7.8 motion to vacate. But the intent and effect of the trial court's orders was nevertheless clear: the trial court intended to, and did, grant Waller's CrR 7.8 motion to vacate.

14

*State v. Waller* (*Anthony Thomas*), No. 98326-7

We interpret the superior court's order as having granted Waller's CrR 7.8 motion and having "vacated" Waller's sentence. Accordingly, RAP 2.2(b)(3) gives the State the right to appeal that order without waiting for the resentencing hearing.

III.   CrR 7.8(c) Requires the Superior Court To Hold a Show Cause Hearing and Rule on the Pending CrR 7.8 Motion before Proceeding to Resentencing

CrR 7.8(c)(2) spells out when the superior court should transfer a CrR 7.8 motion to the Court of Appeals for consideration as a PRP and when the superior court should retain such a motion for decision instead. *See Ruiz-Sanabria*, 184 Wn.2d at 636-38. If the superior court "does not transfer the motion to the Court of Appeals, it shall enter an order fixing a time and place for hearing and directing the adverse party to appear and show cause why the relief asked for should not be granted." CrR 7.8(c)(3). But after vacating its own transfer order in this case, the superior court skipped the show cause hearing and immediately ordered a resentencing hearing. An order coming out of that show cause hearing might have more clearly stated whether or not "the relief asked for" in the CrR 7.8 motion was granted—and, thus, whether the judgment had been vacated.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Waller* (*Anthony Thomas*), No. 98326-7

CONCLUSION

A trial court's order granting a CrR 7.8(b) motion to vacate a judgment and sentence and setting a resentencing hearing vacates that judgment and sentence. Accordingly, the State may appeal such an order under RAP 2.2(b)(3).

We therefore reverse the Court of Appeals. We note that in January 2020, after receiving permission from the Court of Appeals, the superior court vacated its June 2018 orders that had vacated its decision to transfer Waller's motion to the Court of Appeals for consideration as a PRP. 5 CP at 166. Thus, per the superior court's revitalized transfer order, 2 CP at 75-76, we remand to the Court of Appeals for further proceedings consistent with this opinion.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Gordon McCloud, J.

WE CONCUR:

González, C.J.

Stephens, J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

Owens, J.

Whitener, J.